# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LARRY W. RADER, | : |
| Plaintiff, | : |
| v. | : Civ. No. 10-398-LPS |
| SHAREBUILDER CORP., | : |
| ING BANK, fsb, | : |
| SHAREBUILDER SECURITIES CORP. | : |
| Defendant. | : |

## MEMORANDUM OPINION

Larry W. Rader, Pro Se Plaintiff.

R. Montgomery Donaldson, MONTGOMERY, McMCRACKEN, WALKER & RHOADS, LLP, Wilmington, DE, Attorney for Defendants.

March 24, 2011
Wilmington, DE

**Stark, U.S. District Judge:**

The disputes between these parties stem from a typographical error and have now morphed into four lawsuits. Presently pending before the Court are: (i) a motion to dismiss filed by defendants ShareBuilder Corporation, ING Bank, fsb, and ShareBuilder Securities Corporation (collectively, "ShareBuilder" or "Defendants") (D.I. 11); (ii) a motion for summary judgment filed by Plaintiff Larry W. Rader (D.I. 14); and (iii) a "Motion to Remove Judge Leonard P. Stark and counsel for Defendants" filed by Rader (D.I. 25). For the reasons that follow, the Court will grant ShareBuilder's motion and deny Rader's motions.

## I. BACKGROUND

In a previous opinion, the Court set forth more fully certain background that also constitutes background to the instant action. (C.A. No. 09-340 D.I. 79)

Rader has now filed four lawsuits in this Court. (Civil Action Numbers 09-340 (*Rader I*); 09-544 (*Rader II*); 09-781 (*Rader III*); and, now, 10-398 (*Rader IV*)) The first three actions all relate to Rader's efforts in January 2009 to open an online stock trading account with ShareBuilder.[1] Because of an error in entering Rader's bank account number, Rader experienced delays and other problems with his use of the ShareBuilder account to conduct his trading activities. In a report and recommendation submitted on April 7, 2010, and later adopted by Judge Robinson on June 10, 2010, this Court granted judgment in favor of ShareBuilder in all three actions. *See Rader v. ING Bank fsb,* 2010 U.S. Dist. LEXIS 57567 (D. Del. June 10, 2010) (adopting report and recommendation by Magistrate Judge Stark); *see also Rader v. ING Bank*

---

[1] The contract into which the two parties entered is entitled the ShareBuilder Account Agreement (hereinafter, "Account Agreement.").

1

*fsb,* 2010 U.S. Dist. LEXIS 35307 (D. Del. Apr. 7, 2010) (hereinafter, "*Rader I* Opinion"). In the *Rader I* Opinion (at *17), the Court noted, "All of the admissible evidence of record demonstrates that Rader failed to enter the accurate account number for the U.S. Bank savings account he intended to use to fund the purchases he made with his ShareBuilder account."

Also in the *Rader I* Opinion, the Court specifically deferred ruling on certain ShareBuilder motions seeking to recover its attorney's fees and other costs under a clause in the Account Agreement. ShareBuilder's counterclaim for attorney's fees remains pending. The Court also made clear in the *Rader I* Opinion that all further proceedings were stayed. *Id.* at *20 ("In the meantime, all proceedings in *Rader I* (as well as the other *Rader* actions) are STAYED.").

After issuance of the *Rader I* Opinion, counsel for ShareBuilder sent a letter to Rader, dated May 6, 2010, with an offer to settle the litigation (hereinafter, "Settlement Letter"). The Settlement Letter states:

> Mr. Rader:
>
> Defendants' documented legal costs and expenses to date in the above-referenced matters [*Rader I, Rader II,* and *Rader III*] exceed $300,000. As should be evident from Defendants' objections to the Report and Recommendation recently issued by Magistrate Judge Stark, Defendants intend to pursue those costs under contract and Rule 11.
>
> I have been authorized by Defendants ING Bank, fsb, ShareBuilder Corporation and ShareBuilder Securities Corporation to advise you that these Defendants would at this time be willing to resolve and settle all claims against all parties, whether such claims are asserted or unasserted, in, or relating to the matters at issue in, the actions above in exchange for an immediate payment by you of $125,000. **This offer expires at 5:00 p.m. Eastern Standard**

2

> **Time on May 21, 2010.**
>
> Please respond in writing prior to 5:00 PM EST on May 21, 2010
> if you wish to accept this offer.

(D.I. 1 Ex 2) At the top of the letter, written in bold type, is the following: "CONFIDENTIAL SETTLEMENT COMMUNICATION SUBJECT TO FEDERAL RULE OF EVIDENCE 408." (*Id.*)

Rader responded to this letter by filing the instant lawsuit, alleging that the Settlement Letter was "frivolous" and nothing more than a "specious demand to ***blindly pay MMWR fees***." (D.I. 1 at 2-3 (emphasis added)) ShareBuilder moved to dismiss the case for failure to state a claim, and Rader cross-moved for summary judgment in his favor. Subsequently, on February 22, 2011, after receiving certain billing records of defense counsel in connection with proceedings on ShareBuilder's counterclaim in *Rader I*, Rader moved for the recusal of the undersigned judge, as well as recusal of defense counsel. (D.I. 25)

## II. LEGAL STANDARDS

### A. Motion to Dismiss

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff,

plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007)). While heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible on its face" must be alleged. *Twombly*, 127 S. Ct. at 1974. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Technology Charter School Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). Nor is the Court obligated to accept as true "bald assertions," *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Resources, Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

### B. Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be – or, alternatively, is – genuinely disputed must be

4

supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v.*

5

*Catrett*, 411 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## III. DISCUSSION

Rader's complaint is not entirely clear about the nature of the causes of action that he seeks to press.[2] His complaint lists the following claims for relief: (1) "conspiracy to defraud;" (2) "Blackmail and/or extortion per use of the U.S. Mail and internet;" and (3) "violation of rights protected by the U.S. Constitution, the right of Due Process, and unlawfully taking of property." (D.I. 1 at 2-3) Rader does not cite any statutory authority, however, for any of these causes of action, nor does he provide any meaningful support for his claims. In his opening brief in support of his motion for summary judgment, which also serves as Rader's reply brief to ShareBuilder's motion to dismiss, Rader primarily focuses on the blackmail and extortion causes of action. (D.I. 15 at i)

Regardless of Rader's cause of action, ShareBuilder contends that an "absolute privilege" applies to statements made during judicial proceedings. This privilege, in ShareBuilder's view, bars Rader's claims, whatever they are called.[3] (D.I. 12 at 6)

The Court's analysis will proceed in the following manner. First, the Court must consider

---

[2]Rader's complaint begins by noting vaguely, "This is an action for common law damages." (D.I. 1 at 2) The Court recognizes that, because Rader is a pro se plaintiff, his pleadings must be examined generously. *See e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that court should "liberally construe" documents filed by pro se litigants) (internal quotation marks and citations omitted).

[3]The Court notes that neither party has raised any issue about what state's law applies to the merits of Rader's complaint.

6

how Federal Rule of Evidence 408 ("FRE 408") and the concept of absolute privilege apply to Rader's claims. Then the Court addresses each of the three types of claims Rader appears to be trying to allege. Finally, the Court considers recusal.

### A. FRE 408 and Absolute Privilege

ShareBuilder contends that Rader's claims must be dismissed as a result of FRE 408 and the "absolute privilege" given to actions taken as part of a judicial proceeding. (D.I. 12 at 6) The Court disagrees.

FRE 408 provides, in pertinent part:

> Compromise and Offers to Compromise
>
> (a) Prohibited uses. Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:
>
> (1) furnishing or offering or promising to furnish or accepting or offering or promising to accept a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.
>
> Permitted uses. This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a).

FRE 408 is primarily concerned with the *admissibility* of offers to settle, such as the Settlement Letter. On ShareBuilder's motion to dismiss, the Court must take the allegations of the complaint as true – and, in doing so, it does not make decisions as to the admissibility of

7

particular evidence. As importantly, FRE 408 contemplates as a "permitted use" that an offer for settlement may be admissible at trial for certain purposes. Here, Rader alleges that ShareBuilder was acting in bad faith, that it was threatening and attempting to blackmail him. If the settlement letter is the means by which ShareBuilder engaged in such independent violations, then it would potentially be admissible to prove these entirely separate wrongs. *See generally Carney v. American Univ.*, 151 F.3d 1090, 1096 (D.C. Cir. 1998) (noting evidence of settlement offers "can be used to establish an independent violation" or "entirely separate wrong"). Simply put, FRE 408 does not provide a basis to dismiss Rader's complaint.

The same conclusion holds for the "absolute privilege" ShareBuilder invokes. ShareBuilder cites Delaware authority, providing: "The absolute privilege is a common law rule, long recognized in Delaware, that protects from ***actions for defamation*** statements of judges, parties, witnesses and attorneys offered in the course of judicial proceedings . . . ." *Barker v. Huang*, 610 A.2d 1341, 1345 (Del. 1992) (emphasis added). Rader has not sued ShareBuilder for defamation. To the extent *Barker* contemplated application of the absolute privilege to causes of action other than defamation, it appears to have been envisioning actions like defamation, i.e., actions based on a false statement. *See id.* at 1349 ("The absolute privilege would be meaningless if a simple recasting of the cause of action from 'defamation' to 'intentional infliction of emotional distress' or 'invasion of privacy' could void its effect."). Rader has not sued ShareBuilder for any type of false statement. Accordingly, the absolute privilege does not provide a basis for dismissal of Rader's claims.

8

## B. Conspiracy to Defraud

Turning to the merits of Rader's claims, the Court begins with conspiracy to defraud. The elements of civil conspiracy in Delaware are: (1) a confederation or combination of two or more persons; (2) an unlawful act done in furtherance of the conspiracy; and (3) actual damages. *See Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149-50 (Del. 1987); *see also Benihana of Tokyo, Inc. v. Benihana, Inc.*, 2005 Del. Ch. LEXIS 19, at *25-27 (Del. Ch. Feb. 4, 2005).[4] In other words, a "civil action for conspiracy is essentially a tort action" and, therefore, requires an underlying "act which would be actionable even without the conspiracy." *Eli Lilly and Co. v. Roussel Corp.*, 23 F.Supp.2d 460 (D.N.J. 1998); *see also* W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 46 (5th ed.1984). Hence, "[a] civil conspiracy cannot exist in the absence of a separate actionable wrong." *Tristate Courier & Carriage, Inc. v. Berryman*, 2004 Del. Ch. LEXIS 43, 2004 WL 835886, at *13 n.143 (Del. Ch. Apr. 15, 2004).

Here, Rader alleges that ShareBuilder's Settlement Letter is designed to defraud him of $125,000. However, Rader has not alleged that the letter actually caused him harm or that he has suffered any actual damages as a result of the Settlement Letter. Nor has Rader alleged any fraudulent conduct.[5] Finally, but also importantly, Rader has not alleged any unlawful act.

---

[4]Obviously, Rader cannot bring a criminal conspiracy charge against ShareBuilder.

[5]In Delaware, the elements of a claim for fraud are: (1) a false representation, usually of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or the defendant's reckless indifference to the truth; (3) an intent to induce the plaintiff to act or refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance. *See Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992) (internal citation omitted). Rader can point to nothing in the Settlement Letter that is untrue, nor does he allege that he has taken any action or refrained from taking action in reliance on any misrepresentation.

9

Sending the Settlement Letter was not an unlawful act, particularly in light of the strong and long-standing public policy favoring settlement. *See generally Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts."); *Hemstreet v. Spiegel, Inc.*, 851 F.2d 348, 350 (Fed. Cir.1988) ("The law strongly favors settlement of litigation."); *Procter & Gamble Co. v. Paragon Trade Brands Inc.*, 61 F.Supp.2d 102, 108 (D. Del.1996) ("Public policy strongly favors settlement of disputes without litigation.") (internal citation omitted). Thus, Rader's claim for conspiracy to defraud must be dismissed.

### C. Blackmail and Extortion

Rader's complaint also lists blackmail and extortion as causes of action. (D.I. 1 at 3) Rader argues that ShareBuilder has "used the letter to blackmail and extort an immediate cash payment . . . under threat of the companies filing for . . . costs and expenses . . ." (*Id.*)

Blackmail and extortion are, in almost all jurisdictions, crimes, not civil causes of action. *See Scheidler v. National Organization for Women, Inc.* 537 US 393, 410 (2003) ("[T]he Model Penal Code and a majority of States recognize the *crime* of extortion. . . .") (emphasis added). For instance, Rader cites to the federal Hobbs Act, 18 U. S. C. § 1951, which is a criminal statute. *See also* 11 Del. C. § 846. "Although there are a 'handful' of reported cases which consider the existence of the tort, none stand for the proposition that it exists at common law." *See Second & Ashbourne Assocs. v. Cheltenham Twp.*, 1989 U.S. Dist. LEXIS 8823, at *46 (E.D. Pa. July 28, 1989) (granting summary judgment on civil extortion claim and noting, "neither the Restatement nor Prosser on Torts delineates a cause of action for civil extortion."); *see also B.F. Jackson, Inc. v. Costar Realty Info., Inc.*, 2009 U.S. Dist. LEXIS 54101 (S.D. Tex. May 20, 2009) (noting that Texas does not recognize a civil extortion cause of action); *Pegasus Blue Star*

*Fund, LLC v. Canton Prods.*, 2009 U.S. Dist. LEXIS 93080 (D.N.J. Oct. 6, 2009) (noting that New Jersey does not recognize a civil extortion cause of action).[6]

The Court has uncovered no Delaware case law recognizing extortion as a civil offense. *See generally Desmond v. Lucks*, 1988 Del. Super. LEXIS 289, at *6 (Del. Super. Ct. Aug. 19, 1988) (declining to allow civil remedy for extortion). Nor has the Court uncovered any Delaware authority recognizing a civil cause of action for blackmail. Moreover, Delaware adheres to the general principle that, "A statute wholly penal in nature, of course, will not support a civil remedy." *Id.*[7] Finally, it bears emphasis that even if Delaware recognized a civil cause of action for blackmail or extortion, Rader's complaint – based, as it is, on the Settlement Letter – fails to allege facts that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Rader's assertion that the Settlement Letter constitutes an attempted extortion or blackmail is not "plausible on its face." *Id.* at 570.

Accordingly, the Court will dismiss Rader's claims for blackmail and extortion.

### D. **Constitutional Claims**

Rader also lists in his complaint alleged constitutional violations perpetrated by ShareBuilder. He states, for example, that the demand letter "is a violation of plaintiff's rights protected by the U.S. Constitution, the right of Due Process, and unlawfully taking of property."

---

[6]While California does recognize the tort of civil extortion, the tort requires knowledge that a claim is false *and* that the plaintiff must have paid the money that was demanded. *Natural Wealth Real Estate, Inc. v. Cohen*, 2006 U.S. Dist. LEXIS 87439, at *19 (D. Colo. Dec. 4, 2006) (dismissing civil extortion claim).

[7]Rader has also suggested that "Defendants' appeals to the Third Circuit Court of Appeals of Orders denying sanctions in 9c544 and 9c781, confirm the blackmail/extortion." (D.I. 17 at 1) Parties in our adversarial system are (generally speaking) entitled to have their cases reviewed by an appellate court.

(D.I. 1 at 3) However, except for very limited exceptions not relevant here, the Constitution applies only to state action. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978) ("However, most rights secured by the Constitution are protected only against infringement by governments."). The principle that "private action is immune from the restrictions of the Fourteenth Amendment is well established." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974). Thus, persons seeking to vindicate their constitutional rights must allege that some governmental action – as opposed to action by private parties – is responsible for the deprivation of their Constitutional rights. *See also Civil Rights Cases*, 109 U.S. 3, 17-18 (1883) (establishing the "essential dichotomy" between state action and private conduct). Here, Rader has not alleged facts even remotely suggesting that ShareBuilder was acting with governmental authority. Accordingly, Rader's constitutional claims must be dismissed.

### E. **Recusal**

Rader moves to recuse the undersigned judge from handling his cases. As grounds, Rader alleges that the undersigned judge engaged in "misconduct" by conferring on an *ex parte* basis with counsel for ShareBuilder, in particular R. Montgomery Donaldson. (D.I. 25 at 1) In support, Rader relies on Donaldson's billing records, which were produced in discovery in *Rader I*.

Donaldson's typewritten billing records describe the following work performed on December 7, 2009:

> Reviewing and further revising opposition to disqualification motion; communications with counsel re same [i.e. pending motions]; call with J. Chelius re pending motions; call with MJ Stark re same

(D.I. 25 at 6)

Notwithstanding the literal words of Donaldson's billing entry, there was no "call *with* MJ [Magistrate Judge] Stark" on December 7, 2009. Instead, Donaldson called the chambers of the undersigned judge (who was then a Magistrate Judge) to discuss the Court's procedures. He did so again the next day. All of this was consistent with the Court's procedures relating to handling of discovery disputes and similar matters. For those judges who do not prohibit calls to chambers, there is nothing inappropriate (or unusual) about counsel speaking to the judge's staff about the judge's standard procedures. Donaldson's billing records more accurately reflect what occurred on December 8, 2009, when they state: "call with MJ Stark's *chambers* re outstanding motions and motion protocol." (D.I. 25 at 6) (emphasis added).[8]

All of this is described in greater detail in a Declaration submitted by Donaldson. (D.I. 28 at 2-3) The undersigned judge has also spoken with chambers staff, and learned that the recollection of staff personnel is consistent with the recitation provided in Donaldson's Declaration.

There has never been any *ex parte* conversation between the undersigned judge and counsel for ShareBuilder (or with Rader for that matter). Accordingly, there is no basis for Rader's allegation of misconduct and no basis for the undersigned judge to recuse himself.

As part of his recusal motion, Rader seeks additional relief: that ShareBuilder's attorneys

---

[8] It is regrettable that the shorthand used by Donaldson for December 7 misleadingly suggested a discussion occurred with the undersigned judge. It is far more regrettable, however, that Rader evidently did nothing to investigate his concern (e.g., contact or depose defense counsel in connection with ongoing discovery in *Rader I*) prior to making baseless allegations of misconduct.

13

be disqualified from further participation in this action and that earlier recommendations and rulings of this Court be stricken. (D.I. 25 at 1-2) Rader does not provide any reasoning or explanation for these requests, and they can be denied on this ground alone. To the extent Rader's requests for this additional relief is based on the alleged *ex parte* contact with Donaldson, the requests must still be denied, as the factual predicate is absent.

## IV. **CONCLUSION**

For the foregoing reasons, the Court will GRANT ShareBuilder's motion to dismiss all claims and DENY Rader's motion for summary judgment. The Court will also DENY Rader's motion for recusal. An appropriate Order accompanies this Opinion.[9]

---

[9]Rader's motion to dismiss counterclaim (D.I.21) is hereby denied. The Court agrees with ShareBuilder that Rader's motion essentially presents a discovery dispute relating to *Rader I*. It remains pending in *Rader I* (D.I. 107).